Good morning everyone. I'm Tom Beck representing appellant Drew Josfan. Having read my briefs and reply over the last few days, I'm persuaded that what I need to say has been said for me in my briefs and I would entertain some questions if there are any. The summation of our position before this court is that in granting the police department officer defendant's summary judgment, the court weighed the evidence, ignored the disputed evidence, and reached a probable cause determination that contravenes federal law on the issue of probable cause together with the duty of investigation. As to the non-law enforcement defendants, that is the Indochine defendants, the court conflated probable cause for a prosecution with probable cause for an arrest and those two are obviously distinct for various reasons. The simplest way to put that is if the two individuals in this case who falsely accused Mr. Josfan of trespassing and battery lied to the police, it's a defense to the police but it isn't as to the prosecutor because that was the vehicle that got the charges filed against the appellant. That's as much as I'm going to say for the moment and I'll say for the rest of my time. Good morning, your honors. Robin Lewis for officers Corbett, Ruiz, and Echols. We are splitting our ten minutes. Mr. Rea is representing the Indochine defendants and so I'll take about five minutes and then the rest for him. I would like to start with the probable cause issue and he will address the conspiracy issue. We of course disagree with what Josfan's position is. There is no evidentiary basis for disputed facts here. What was reported to the officers is undisputed that a 911 call came in. That information was dispatched to all three officers, to Echols who was working alone and to Corbett and Ruiz who were partners that night. Basically they heard about a bar fight ongoing essentially. Yes, correct. And that they were harassing female customers. Right. So that's undisputed. And then once the officers got to the bar, Mr. George reported to Officer Echols that the two defendants, Josfan and Pavlovich, were belligerent, that they were pushing and shoving, refusing to leave. And they were drunk. And they were drunk. Mr. Gomez similarly reported to Officer Echols the same basic information and said both of them were pushing. So there's no dispute about that. All three officers had that information. So that supports the probable cause determination. Josfan attempts to dispute that by pointing to excerpts in the record without giving the full story. He points to Gomez's deposition where Gomez said he didn't know something. Well saying I don't know something is not equivalent to saying something didn't happen. And again he points to the investigation afterwards. The Ella report and he just takes a piece of it and if you look at the whole transcript and the whole report, the Ella report after the fact says that George reported that both of the Pavlovich and Josfan were pushing and were belligerent. Josfan appears to rely on a contorted definition of the word seizing because Ruiz and Corbett were involved in the physical act of seizing Josfan. They say that they had to have all the information necessary to do that. Well he has not cited any authority for that. It isn't how police operations work. We have in fact a number of cases that talk about sort of the collective knowledge of the group at the time. Right. It's settled authority in the Ninth Circuit, United States versus Ramirez being the primary case on that point. Well in the collective knowledge there's the question of whether or not there was a direction by one officer with the knowledge to two others or to the others who actually affected the arrest and then the second or the first part of that is if they're all acting together then their knowledge is collective and here I gather the position was that these folks were acting together when they went into the alley. One had his attention drawn to one party and the other to Mr. Josfan if that's how you say his name. So they all had collectively they had sufficient knowledge to give them probable cause. Is that your point? Yes it is. And they all were involved in the arrest. It was a team effort so to say one did the arrest and the other really isn't accurate and doesn't match how these things generally come down. The other I guess the final piece that I would say is that Ruiz and Corbett also talked to Indus Sheen employees and got the same information. So I'm not going to focus on conspiracy but I just want to say that it's hard to see where the conspiracy is. The story that came in through the 9-1-1 call, the information that came in before the incident occurred. Completely matches the story after the incident occurred. So with that I'll defer to Mr. Rea unless there's a further question. I don't believe there is so we'll hear from Mr. Rea. Thank you. Good morning may it please the court William Rea Jr. for Indus Sheen, Mike Gomez and Michael George. I wanted to address an issue that was raised in the plaintiff's reply brief. I had thought the plaintiff had abandoned all the other causes of action. But apparently there's two other causes of action still in play according to the plaintiff at least. The 6th cause of action for intentional infliction of emotional distress and the 9th cause of action or at least a portion of the 9th cause of action for violation of civil code section 52.1. If the court is going to consider these claims I just want to make the following points. As I understand the plaintiff's reply brief if this court determines that there is a triable issue with respect to the lack of probable cause then the court must reverse the summary judgment with respect to those two causes of action. I believe that's the plaintiff's claim. My answer is no. Lack of probable cause is not an element of either one of those causes of action. I would refer the court back to our briefs in the district court as well as to Judge Matz's thorough and excellent opinion which I think really handled the case very very well on these causes of action as well. For some reason I thought that the remainder of the case had been settled. The portion of the case that wasn't decided on summary judgment was excessive force against officers Ruiz and Corbett. As my understanding these other parties can address it better but I believe that portion of the case was settled after the summary judgment was granted. It depends on whether we follow our usual rule that if it's not argued specifically and distinctly in the opening brief it's deemed abandoned. That's my understanding as well your honor. Briefly with respect to conspiracy I think Ms. Lewis actually did a fine job of covering the waterfront. Mr. George phones 911. There's two belligerent males in the bar harassing female customers and refusing to leave. The police officers arrive and they speak with Mr. George, Mr. Gomez and the bartender. They receive essentially the same information. The police go into the back alley and they have their interlude with Mr. Josvan and Mr. Pavlovich in the back alley. They return to the bar and then speak with Mr. George which time Mr. George performs the citizen's arrest. Nothing about that would imply or you cannot infer a conspiracy from that because that's all perfectly normal behavior. The inference is at least as strong that there's nothing tortious or improper going on when you call the police for help, when you answer police officers questions and when you perform a citizen's arrest. And then afterwards, after Sergeant Ella begins his investigation and speaking with the ladies in the bar as to what happened to them, things go from bad to worse for Mr. Josvan. So there simply is, as Judge Matz correctly found, there simply is no evidence of a conspiracy. A rational jury could not look at these facts and determine that there was a conspiracy. And with that I will, unless there's any further questions I'll submit. I don't believe so. Thank you. Thank you, Your Honor. Mr. Beck? Thank you. Let me address in reverse order. The Indochine defendants don't seem to understand that the allegations of both conspiracy under state law to maliciously prosecute and the 1983 claim for malicious prosecution are in fact not dependent on a probable cause determination that there was probable cause to arrest. I want to emphasize that the radio call or the broadcast, the 911 broadcast that came out, all three of these officers heard that. But that says that the subjects that who's causing the trouble is a guy with bald head and a green upper shirt, sweatshirt. That didn't describe Mr. Josvan at all. No, but that's not the only thing that was known by the time of the arrest that you're complaining of and of the other events. And, you know, I'm speaking only for myself here, but it seems to me that that this appeal is utterly frivolous given the facts that were adduced below and that are in the police report. You know, it's a typical bar fight, drunken disorderly. Your client was a part of it. He got arrested. End of story. In terms that I'm, as I say, speaking only for myself. May I address that? Of course. This was not a typical bar fight. Mr. Josvan was arrested, booked and prosecuted for allegedly battering Mike George. The next day Mike George told Detective Ella that that never happened and that's why Mr. Josvan had the criminal cases dismissed against him and got his determination of factual innocence. He was also never asked to leave the premises. That was a charge that probable cause rested on and none of the officers that actually seized him, and I'm emphasizing here, Echols seized no one. The seizure was by Ruiz and they have to know and Corbett has to know the facts that are essential to the seizure. They admit in their reports and in their deposition testimony that they learned nothing from anyone inside the bar or even over the air that gave the essential facts to probable cause to seize him at the moment that the seizure took place. By the time Mr. Josvan is in custody and they start to develop their facts later on is not the rate probable cause is determined either for the arrest or for the prosecution and the final analysis. Did Echols have sufficient probable cause to arrest Josvan? No, because he didn't arrest him. That's not what I asked you. I asked you if he had sufficient probable cause to do so. Not whether he did, but whether he had sufficient probable cause to do so. It depends on whether or not the statements that were presented in the motions were disputed. Keep in mind that the two informants, that is George and Gomez testified and their evidence was that when the cops came in all they said was they're out there. Now if that's what the evidence is that they're out there, that's not probable cause as a matter of law for anybody's seizure, notwithstanding what the 911 call had said. You concede there's more information than that that Echols had, don't you? No, not at all. In fact, that was one of the issues I raised on the appeal because there was evidence that these guys said one thing at one time and one thing at another and I offered those to the trial court as disputed issues of fact that a jury had to decide did they actually just say they're out there or was there more because that was in factual dispute. There's the error I attributed to the court in terms of weighing the evidence. They couldn't decide that they're out there was not the only thing that they said. They admit that they said that and then they went back later and added to it, but what happened later is beside the point. Did they admit that was the only thing they said? Yes. No, they didn't admit that was the only thing they said at the time. According to the record. They said that affirmatively and later gave more detailed accounts. But what happens later doesn't amount to probable cause. They could say anything they want after Mr. Jospin has been seized. No, but they said in later testimony that at the time they had told the officers more than that he was out back. Echols report in fact says a number of things that he learned, doesn't it? It does that he says he learned, but that's irrelevant because he didn't make the seizure. Okay, so nothing that he knew. You reject the notion of the collective knowledge. No, I don't. But as you pointed out, if that collective knowledge is imputed to the seizing officers, whatever Echols might have known doesn't benefit Ruiz and Corbett. Why not? Because he didn't pass it along. They were all there at the time, correct? Yes. Okay. Why isn't that a joint operation among the three of them? Because the issue is who did the seizing and what that individual who did the seizing knew. Let's suppose that it's absolutely 100% clear that there's probable cause to arrest someone. You have an eyewitness saying, I was hit in the face by that person right there for no reason whatsoever. They've assaulted me. And so I say to someone else, would you help me arrest this person? And they didn't happen to hear that. You think that there's no probable cause because they didn't happen to hear all of that? No, not under established Ninth Circuit law in the 1983 claim, because that kind of a statement from a person, I got socked by that guy, requires investigation. And they admit they asked no questions of anyone. Not before and not after. Oh, so you don't think, in my example, you don't think anybody has probable cause to arrest? Using your example, if one person says to a police officer, I got socked by that guy, that on its face is probable cause. But we also know from Ninth Circuit authority that when that statement is made by a civilian, the officer has to do an investigation. Okay, that is not an answer actually to my original question. Let's assume that there's been an investigation for an hour and a half, and we're absolutely sure that this guy socked me. So one officer knows that. Two other officers help arrest that person, or maybe physically do the arresting. Is it your position that the second and third people don't have probable cause, even though it's 100% certain that officer number one has probable cause? I would argue against that. What's your best case for that? I can't cite it to you off the top of my head. The whole issue of collective knowledge wasn't even part of the motion, nor on the appeal, nor by any of the parties that are appellees in this case was ever mentioned. But it's your position. I mean, you're the one who's arguing that officers two and three don't have probable cause simply because they weren't expressly told by officer number one, who was also present, all the reasons why probable cause existed. That's your whole argument, it seems to me. My argument is that when the court decided to believe what Echols was told, in light of evidence that both Gomez, who were the informants, had different stories at different times, and embellished those details, that Echols himself didn't have probable cause. And that probable cause issue should have gone to a jury. That's what I'm saying. I mean, aside from this other principle of collective knowledge, if Gomez and George are shown by the evidence to have contradicted one another, or contradicted by Ellis himself. For example, Ellis's report, not Ellis, I'm sorry, it was Echols's report that said that George told him that Mr. Josphan refused to leave and took a poke at him. The next day he said that never happened. So now what does the trial court do? I've got evidence in front of the court that's saying those representations that Echols makes that I made to him, I didn't say. So if a jury believes that Mr. Gomez never told officer Echols what Echols wrote, then where's the probable cause? That reverts right back to the fundamental issue. Can you weigh evidence? And the court in this case, in my judgment, had. I've got 24 seconds. I'll give it up. Okay, thank you, counsel. We appreciate the arguments of all three counsel. The case is closed.
judges: Shea, Graber, Wardlaw